**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **HASAN CEKIC** | **CIVIL ACTION NO. 1:26-1945** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **MELLISSA HARPER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

# REPORT AND RECOMMENDATION

Petitioner Hasan Cekic,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 16]. For reasons below, the Court should deny the petition.

## Background

Petitioner maintains that he is a citizen of Bosnia. [doc. #s 1, p. 2; 17, p. 1]. Respondents' attached Notice to Appear shows that in 2009, DHS considered Petitioner a citizen of Bosnia-Herzegovina. [doc. # 16-1, p. 1].

Respondents state that Petitioner is a "national of Yugoslavia and a citizen of Montenegro." [doc. # 16]. In 2025, DHS considered Petitioner a citizen of Montenegro. [doc. # 16-2, pp. 1, 2]. Petitioner was born in the Village of Gusinje which, according to the

---

[1] Petitioner's "A Number" is 020-386-081.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

Government in 2025, is "under the jurisdiction of Montenegro." *Id.* The Government also stated in 2025 that on September 11, 2014, Montenegro "did officially recognize [Petitioner] as a citizen of Montenegro . . . ." *Id.* at 2.

The undersigned takes judicial notice that in approximately 1991-1992, Yugoslavia ceased to function as a country and broke into several countries, including Montengro and Bosnia-Herzegovina.[3] That said, the undersigned does not at this time decide the factual dispute concerning whether Petitioner is a citizen of Bosnia-Herzegovina, Montenegro, or both.

Petitioner entered the United States of America on September 13, 1973, as a refugee. [doc. #s 16, p. 1; 16-1, p. 1]. On November 7, 1975, Petitioner "adjusted to a lawful permanent resident." [doc. # 16-2, p. 2].

On July 13, 2011, an immigration judge ordered Petitioner removed "due to his conviction of an aggravated felony after his admission to the United States." [doc. # 16, p. 2]. On November 23, 2011, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal. *Id.*

Petitioner states that in 2012, ICE detained him and attempted to remove him to Bosnia, but it was unsuccessful. [doc. # 5-1, p. 2].

In October 2013, ICE released Petitioner from detention on supervision after determining that it could not effectuate his removal to Bosnia. [doc. # 16-5].

On November 11, 2025, ICE re-detained Petitioner. [doc. # 1, p. 3].

Petitioner filed this proceeding on approximately June 8, 2026. He claims that the Government has detained him for a prolonged period and that there is no significant likelihood of

---

[3] https://history.state.gov/milestones/1989-1992/breakup-yugoslavia (last visited September 24, 2026).

his removal in the reasonably foreseeable future. [doc. # 1, p. 3]. He maintains that he "has complied with all requirements of respondents to facilitate his removal to Bosnia," but the Government has failed to remove him. *Id.* He adds that the Government was unable to remove him in 2011 and has been unable to remove him "in the intervening 15 years[.]" [doc. # 5-1, p. 9].

Petitioner also claims that Respondents violated regulatory law when they revoked his release on supervision without first (i) notifying him of the reasons for his re-detention and affording him an opportunity to respond to those reasons and (ii) determining if there was a significant likelihood of his removal in the reasonably foreseeable future. [doc. # 5-1, p. 8].

Finally, Petitioner claims that the Government may not remove him to a third country without first providing him "sufficient notice and meaningful opportunity" to "present any claims of fear of prosecution or harm upon removal to a designated" third country. [doc. # 5-1, p. 9].

Respondents opposed the petition on September 8, 2026. [doc. # 16]. Petitioner replied on September 22, 2026. [doc. # 17].

## <u>Law and Analysis</u>

### I. *Zadvydas v. Davis*

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in

paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[4] "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas*, 533 U.S. at 701. If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

[4] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Here, Petitioner fails to meet his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents present the declaration of Acting Assistant Field Office Director Justin Williams, who declares in part:

> 6. On December 11, 1980, Petitioner was convicted in the Kings County Supreme Court in Brooklyn, New York, of Attempt to Commit a Crime, New York Penal Law § 110, regarding the offense of Criminal Possession of a Weapon in the Second Degree, to wit: a firearm, in violation of New York Penal Law § 265.03.
>
> 7. On April 23, 2007, Petitioner was convicted in Broome County Court in Binghamton, New York, of Criminal Possession of a Weapon in the Fourth Degree, to wit: a 9 mm Luger pistol, in violation of New York Penal Law § 265.01.
>
> 8. On November 8, 2010, in the United States District Court for the Northern District of New York, Petitioner was found guilty of one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to 27 months of imprisonment with the United States Bureau of Prisons.
>
> . . . .
>
> 11. On November 23, 2011, the BIA dismissed Petitioner's appeal and affirmed the Immigration Judge's order of removal.
>
> 12. On July 22, 2025, the Johnson City Village Police Department arrested and charged Petitioner with Criminal Trespass in the Third Degree, property fenced in or enclosed, in violation of New York Penal Law § 140.10.
>
> 13. On July 23, 2025, the Johnson City Village Police Department arrested and charged Petitioner with Criminal Contempt in the Second Degree, disobeying a court order, in violation of New York Penal Law § 215.50.
>
> 14. On November 11, 2025, the Johnson City Village Police Department arrested and charged Petitioner with Criminal Contempt in the Second Degree, disobeying a court order, in violation of New York Penal Law § 215.50.
>
> 15. On November 11, 2025, Petitioner came into ICE custody and has remained in ICE custody since that date.
>
> 16. On November 19, 2025, ERO was notified that Petitioner's travel document had expired on September 30, 2025. The Assistant Attaché for Removal for

Montenegro was contacted to confirm whether travel on an expired travel document was permitted. ERO was advised that a new travel document request was recommended to avoid delays.

17. On December 2, 2025, Petitioner's travel document request was completed, and ERO was awaiting approval of the money order.

18. On December 4, 2025, ERO submitted Petitioner's travel document request and money order to the Montenegro Consulate via UPS.

19. On December 8, 2025, ERO served Petitioner with Form I-229(a), Warning for Failure to Depart, and completed a 30-day Post Order Custody Review.

20. On January 13, 2026, ERO checked the delivery status of Petitioner's travel document request and money order submitted to the Montenegro Consulate. The tracking confirmed that Petitioner's travel document was pending issuance.

21. On February 2, 2026, ERO contacted the Montenegro Consulate regarding the status of the issuance of a travel document for Petitioner.

22. On February 6, 2026, ERO received notice that a travel document for Petitioner had been approved and that the original was being sent to ERO via UPS.

23. On February 12, 2026, ERO received the original travel document for Petitioner from the Montenegro Consulate.

24. On February 15, 2026, ERO served Petitioner with an imminent removal letter.

25. On February 17, 2026, ERO received Petitioner's flight itinerary. Petitioner was scheduled to depart the United States from Miami, Florida, on March 1, 2026.

26. On March 1, 2026, Petitioner failed to comply with ERO and did not board his flight for removal. Petitioner was returned to an ERO detention facility.

27. On March 10, 2026, ERO received a commercial travel packet for completion of a new travel document.

28. On March 19, 2026, Petitioner failed to comply with ERO requirements to complete the travel document application. ERO contacted the Montenegro Embassy for assistance.

29. On March 29, 2026, ERO again emailed the Montenegro Embassy for assistance.

> 30. On April 7, 2026, ERO provided the travel document application to Petitioner for completion.
>
> 31. On April 13, 2026, Petitioner failed to comply with ERO's removal efforts and did not complete the travel document application provided to him.
>
> 32. On April 28, 2026, ERO requested a money order pending receipt of the completed travel document request.
>
> 33. On June 9, 2026, ERO's money order request to complete the travel document request remained pending.
>
> 34. On July 16, 2026, ERO's money order request to complete the travel document request remained pending.
>
> 35. On August 2, 2026, ERO's money order request to complete the travel document request remained pending.
>
> 36. On August 11, 2026, ERO was notified that the money order had been approved and sent to ERO via UPS.
>
> 37. As of August 26, 2026, ERO is actively working to remove Petitioner from the United States to Montenegro.

[doc. # 16-4].

Petitioner does not dispute the relevant declarations above. He has not cooperated in efforts to remove him to Montenegro. As above, DHS secured a travel document for Petitioner for Montenegro, as well as a departure flight, but Petitioner refused to board the flight. Following that, Petitioner twice refused to complete a travel document application.

Petitioner, not ICE, prolonged his detention and diminished his likelihood of removal (at that time) by thwarting his removal. *See Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("[T]he detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock.") (cited with

approval by *Hook v. Lynch*, 639 F. App'x 229, 230 (5th Cir. 2016) (denying a petition where the petitioner failed to cooperate with efforts to remove him)).[5]

There is no indication that Petitioner is now cooperating or intends to cooperate with removal efforts. Petitioner therefore fails to establish that there is no significant likelihood of removal in the reasonably foreseeable future. *See Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (opining, where the petitioner impeded his removal, that the district court did not err in determining that the petitioner failed to show that there was no significant likelihood of his removal in the reasonably foreseeable future if he cooperated).[6] The Government is actively attempting to remove Petitioner, and Petitioner provides no indication that it will not succeed if he begins cooperating.

Accordingly, Petitioner's detention remains reasonable. He may re-file his claim if he develops good reason to believe, in light of any changes in circumstance or new evidence—beginning with his full cooperation with efforts to remove him—that his removal is not

[5] *See also Lusanga v. Ramos*, 2019 WL 2851759, at *2 (W.D. La. 2019) ("An alien is not entitled to relief for a delay that he himself has intentionally caused by deliberately obstructing his otherwise imminent deportation; it would be inequitable to allow him to benefit from that delay.").

[6] *See also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("In contrast to the petitioner in *Zadvydas,* who could not be removed because the receiving countries refused to accept him, Oladokun's non-cooperation is the only barrier to his removal. The Department could have removed Oladokun to Nigeria, but for his misconduct at the airport."); *Linares v. Dep't of Homeland Sec.*, 598 F. App'x 885 (11th Cir. 2015) (reasoning, where the detainee refused to board a plane, that the petitioner could not meet his burden and that there was a significant likelihood that he would be removed "as soon as he cease[d] obstructing the government's efforts to remove him."); *Iwuoha v. Viator*, 2014 WL 4678860, at *3 (W.D. La. Sept. 19, 2014) ("[I]t is clear that Nigeria is willing to accept Petitioner—travel documents for Petitioner had already been issued and Petitioner was in the process of boarding the airplane bound for Nigeria when his own intentional criminal conduct intervened."); *Sam-Kabba v. Napolitano*, 2013 WL 5960670, at *1 (W.D. La. Nov. 6, 2013).

significantly likely in the reasonably foreseeable future. *See, e.g., Adefemi v. Gonzales*, 228 F. App'x 415, 416-17 (5th Cir. 2007).[7]

**II. 8 C.F.R. § 241.13(i)**

Petitioner claims that Respondents violated 8 C.F.R. § 241.13(i)(2) when they revoked his release without having evidence that there was a significant likelihood of his removal in the reasonably foreseeable future. [doc. # 5-1, p. 8]. He also claims that the Government violated Section 241.13(i)(3) by failing to notify him of the reason for his re-detention. *Id.*

Section 241.13, however only applies "where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." As above, Petitioner does not provide good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.[8] The Court should deny this claim.

---

[7] Of note, Under 8 U.S.C. § 1231(a)(1)(C), "The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." Applying Section 1231(a)(1), the Fifth Circuit Court of Appeals reasoned in two unpublished opinions that when a detainee fails to cooperate with efforts to remove him, the "removal period" under Section 1231(a)(1)(A), is effectively tolled. *Hook*, 639 F. App'x at 230 (unpub.); *Gonzalez v. Gills*, 2022 WL 1056099, at *1 (5th Cir. Apr. 8, 2022) (unpub.). Here, the undersigned need not determine if Petitioner's actions tolled the statutory removal period in Section 1231(a)(1)(A) because, regardless, he is not entitled to relief under *Zadvydas*. That said, it is worth noting that Section 1231(a)(1)(C), "evidences Congress' intent to permit continued detention when an alien refuses to cooperate and attempts to thwart the INS' efforts to deport him." *Lema v. I.N.S.,* 214 F. Supp. 2d 1116 (W.D. Wash. 2002). Otherwise stated, Congress plainly declined to fault the government for failing to remove a detainee by a deadline when the detainee fails to cooperate in effecting his removal.

[8] In fact, under Section 241.13(d)(2), "The alien shall include with the written request information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."

**III. Notice of Removal to Third Country**

Petitioner claims that the Government may not remove him to a third country (Montenegro) without first providing him "sufficient notice and meaningful opportunity" to "present any claims of fear of prosecution or harm upon removal to a designated" third country. [doc. # 5-1, p. 9].

Neither party attaches Petitioner's removal order.[9] But more importantly, Petitioner does not even state that an immigration judge ordered him removed to any country other than Montenegro. Accordingly, his claim that the Government failed to provide him sufficient notice and an opportunity to oppose removal to Montenegro is entirely conclusory.

Even assuming Montenegro is a third country—i.e., a country not designated in Petitioner's removal order—Petitioner has not, as Respondents argue, "indicated to this Court that he has requested a credible fear interview[.]" [doc. # 16, p. 10]. And Petitioner does not address, in his reply, Respondents' contention that they have no record of any such request. *Id.* In fact, Petitioner does not address this claim at all in his counseled reply.

The Court should deny the claim.

**Conclusion**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Hasan Cekic's petition be **DENIED AND DISMISSED WITHOUT PREJUDICE.**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another

[9] The undersigned does not fault Petitioner for failing to present evidence of which Respondents are likely in sole possession.

party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 25th day of September, 2026.

Kayla Dye McClusky
United States Magistrate Judge